INDEX TO EXHIBITS

EXHIBIT A   -   Declaration of Jack Kairy

EXHIBIT B   -   Border Patrol Agent Sarah Felix's Report

# EXHIBIT A

1  STEVEN F. HUBACHEK
   California Bar No. 147703
2  **DAVID M.C. PETERSON**
   California Bar No. 254498
3  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
4  San Diego, California 92101-5008
   Telephone: (619) 234-8467
5  Facsimile: (619) 687-2666
   Steven_Hubachek@fd.org
6
   Attorneys for Mr. Urueta-Herrejon
7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                     **(HONORABLE LARRY A. BURNS)**

11  UNITED STATES OF AMERICA,            ) Case No. 08CR0549-LAB
                                          )
12           Plaintiff,                   )
                                          )
13  v.                                    ) DECLARATION OF
                                          ) JACK R. KAIRY
14  SERGIO URUETA-HERREJON,               )
                                          )
15           Defendant.                   )
                                          )
16  _____)

17         I, Jack R. Kairy, declare under penalty of perjury that:

18         1. I am an investigator for Federal Defenders of San Diego, Inc. (FDSDI). I have been so employed

19  for 14 years.

20         2. I am a fluent Spanish speaker, having been raised in Peru. I use my Spanish daily as an FDSDI

21  investigator.

22         3. I am the investigator assigned to the case of *United States v. Urueta-Herrejon*. As part of my

23  duties, I have interviewed several material witnesses and reviewed a DVD of the interrogation of Mr. Urueta

24  Herrejon and several material witnesses as well as a CD of dispatch communications.

25         4. The DVD of the interrogation of Mr. Urueta Herrejon does not include a discussion in which Field

26  Operations Supervisor Nelson Attiles discusses with Mr. Urueta Herrejon the differences between his

27  administrative rights and those applicable to a criminal prosecution.

28         5. At one point in the interrogation recorded on the DVD, Mr. Urueta Herrejon inquired about being

returned to Mexico. He asked if "the people" that are caught "in this way," are they deported to Mexico? Attiles responded by asking if Mr. Urueta Herrejon was inquiring about the people driving vehicles. Mr. Urueta Herrejon agreed that he was asking if the driver would be deported to Mexico. Attiles responded "yes." Attiles provided no further clarification.

6. I have reviewed a compact disc containing the dispatch communications, and there is no statement on the recording that I understood as saying that the vehicle allegedly driven by Mr. Urueta Herrejon failed to yield.

7. I interviewed material witnesses Israel Salmeron and Zenai Salmeron. They advised me that the investigating Border Patrol Agent entered the motor home through a side door after the motor home was stopped. He did not request permission to enter the motor home.

8. I also reviewed the questioning of material witnesses Israel Salmeron, Zenai Salmeron, and Bogar Paul Mendez-Palomino (listed in the indictment as Bogar Paul-Mendez) recorded on the DVD. The material witnesses were asked to identify the driver from the photographs rather than being told that a suspect was not necessarily depicted in any photograph.

I swear that, to the best of my knowledge and memory, the foregoing is true and correct.

Dated: March 24, 2008

*/s/ Jack R. Kairy*
JACK R. KAIRY

# EXHIBIT B

| U.S. Department of Homeland Security | Subject ID : [redacted] | | Record of Deportable/Inadmissible Alien | | | |
|---|---|---|---|---|---|---|
| Family Name (CAPS) URUETA-HERREJON, Sergio | First | Middle | Sex M | Hair BLK | Eyes BRO | Cmplxn MED |
| Country of Citizenship MEXICO | Passport Number and Country of Issue | Case No. [redacted] | Height 68 | Weight 125 | Occupation LABORER | |
| US Address See Narrative | | | Scars and Marks See Narrative | | | |
| Date, Place, Time, and Manner of Last Entry 02/09/2008, 2000, 18 mile(s) E of CAL, PWA (AFOOT) | Passenger Boarded at | FBI Number [redacted] | ☒ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated | | | |
| Number, Street, City, Province (State) and Country of Permanent Residence [redacted] | | | Method of Location/Apprehension PB 518.3 | | | |
| Date of Birth [redacted]  Age: 25 | Date of Action 02/17/2008 | Location Code ELC/CAX | At/Near Calexico, CA | | Date/Hour 02/17/2008 0545 | |
| City, Province (State) and Country of Birth MORELIA, MICHOACAN, MEXICO | AR ☒ | Form (Type and No.) Lifted ☐ Not Lifted ☐ | By FRANCISCO CONTRERAS | | | |
| NIV Issuing Post and NIV Number | Social Security Account Name | | Status at Entry PWA Mexico | | Status When Found IN TRAVEL | |
| Date Visa Issued | Social Security Number | | Length of Time Illegally in US 4-30 DAYS | | | |
| Immigration Record POSITIVE - See Narrative | Criminal Record None Known | | | | | |
| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | | | Number and Nationality of Minor Children 1/MEXICO | | | |
| Father's Name, Nationality, and Address, if Known See Father info in Narrative | | Mother's Present and Maiden Names, Nationality, and Address, if Known See Mother info in Narrative | | | | |
| Monies Due/Property in U.S. Not in Immediate Possession None Claimed | Fingerprinted? ☒ Yes ☐ No | Systems Checks See Narrative | Charge Code Words(s) See Narrative | | | |
| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary Hr | Employed from/to | | | |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FINS [redacted]     Left Index fingerprint     Right Index fingerprint

US ADDRESS
----------
SERVICE PROCESSING CENTER, ICE 1115 NORTH IMPERIAL AVENUE
EL CENTRO, CALIFORNIA, 92243.

SCARS, MARKS, AND TATTOOS
-------------------------
...(CONTINUED ON I-831)

[signature] 2/17/2008
(Date/Initials)

SARAH FELIX
Border Patrol Agent
(Signature and Title of Immigration Officer)

Alien has been advised of communication privileges

| Distribution | Received (Subject and Documents) (Report of Interview) |
|---|---|
| TO FILE | Officer SARAH FELIX |
| ELC | on February 17, 2008 at 0657 (time) |
| CAX | Disposition Warrant of Arrest/Notice to Appear |
| | Examining Officer ALEXANDER P. MILLS |

Form I-213 (Rev 08/01/07)

036

| U.S. Department of Homeland Security | Continuation Page for Form I213 |
|---|---|

| Alien's Name | File Number | Date |
|---|---|---|
| URUETA-HERREJON, Sergio | Event No: | 02/17/2008 |

TATTOO BACK-SERGIO, CLOWN
SCAR CHEST
TATTOO ARM, LEFT, NONSPECIFIC-HEART
TATTOO ARM, RIGHT, NONSPECIFIC-ROSE


FATHER NAME & ADDRESS
----------------------
 Nationality:MEXICO URUETA, Jose
SAME AS SUBJECT
MORELIA, MICHOACAN, MEXICO

MOTHER's NAME & ADDRESS
-----------------------------
 Nationality:MEXICO HERREJON, Zenaida SAME AS SUBJECT , MORELIA, MICHOACAN, MEXI

RECORDS CHECKED
----------------
CIS Neg
DACS Neg
IBIS Pos
NCIC Neg
TECS Neg

CHARGE CODES
------------
I6A
I6E


FUNDS IN POSSESSION
--------------------
United States Dollar 57.40
Mexican Peso 175.00   S.V.H.



Record of Deportable/Excludable Alien:
On February 17, 2008, Border Patrol Agent Francisco Contreras was performing his
duties in a fully marked and operational service vehicle at the United States
808 Checkpoint on Interstate 8. This checkpoint is located on the westbound lane
Interstate 8 approximately one mile east of the East Y. The East Y is the inter
Interstate 8 and Highway 98. The 808 Checkpoint is located approximately 25 mi
Calexico, California.

At approximately 5:10 a.m., Border Patrol Agent Jorge Vega-Torres and Border Patro
Marla Soto were following a group of ten suspected illegal aliens that crossed il
into the United States approximately 17 miles east of Calexico, California. BPA
contacted the Calexico Border Patrol Station's Remote Video Surveillance System
Operator and advised them to scan north of his location to attempt to locate the
approximately 5:25 a.m., they observed a group of individuals north of their loc
south of Interstate 8. The RVSS Operator advised Agents Vega-Torres that the gr
individuals... (CONTINUED ON NEXT PAGE)

| Signature | Title |
|---|---|
| SARAH PELIX | Border Patrol Agent |

2 of

Form I-831 Continuation Page (Rev. 08/01/07)

| U.S. Department of Homeland Security | | Continuation Page for Form I-213 |
|---|---|---|
| Alien's Name<br>URUETA-HERREJON, Sergio | File Number<br>Event No. | Date<br>02/17/2008 |

were stationary south of the interstate appearing to be waiting for something. Because of its close proximity to the Mexico/United States International Border, Interstate 8 is a commonly-used location by smugglers to pick up illegal aliens. The RVSS operator then observed a large van-type vehicle pull over to the shoulder of the interstate next to the group. The RVSS operator then observed the group of individuals run towards and board the vehicle. The RVSS Operator advised agents in the area of their observations and that the vehicle was now traveling eastbound on Interstate 8. The RVSS operator maintained a constant visual of the vehicle as it continued eastbound on the interstate approaching the East Y.

BPA Contreras informed BPA Vega-Torres and the RVSS Operator that he would be stationed at the East Y on Interstate 8 to attempt to intercept the vehicle. BPA Contreras observed one vehicle approaching his location that he confirmed with the RVSS Operator as the one that the group of individuals boarded. BPA Contreras advised Agents Vega-Torres and others in the area that the vehicle was a motor home that was exiting Interstate 8 and onto Highway 98 westbound lane. This behavior is typical of smugglers once they have picked up their illegal alien loads to turn around and travel back in the opposite direction. BPA Contreras began to follow the motor home, bearing California License Plate# 5YYF___ traveled westbound on Highway 98.

RVSS operators maintained a constant visual of the vehicle in which the suspected illegal aliens had loaded into, and the fact that the motor home was the only vehicle on the Interstate at this time. BPA Contreras requested a vehicle registration and wants check on the motor home through Sector Dispatch (KAK 840). Shortly thereafter, Sector Dispatch informed BPA Contreras that the motor home had a valid registration to Carlos Pineda out of Perris, California and that it had not been reported stolen. Based on Contreras' past experience, he observed the behavior of the driver of the motor home to replicate that of other load drivers in the past to use this type of conveyance during holiday seasons to blend in with winter visitors and recreational dune riders who travel in motor homes.

BPA Vega informed BPA Contreras that he was on Highway 98 between Drop 3 and Drop 4. Vega requested permission from Supervisory Border Patrol Agent Alexander Mills to use Controlled Tire Deflation Device (CTDD) if the motor home failed to yield to BPA emergency lights and sirens. SBPA Mills granted BPA Vega permission.

BPA Contreras advised BPA Vega that the motor home had just passed Drop 3 on Highway 98 would attempt a vehicle stop. BPA Contreras activated his emergency lights and siren on his service vehicle in order to pull over the vehicle. Since BPA Contreras assigned vehicle is an unmarked service vehicle, he made sure to safely move back and forth in the vehicle lanes so that the driver of the motor home could observe his emergency lights. BPA Contreras informed BPA Vega-Torres that the motor home was failing to yield to his emergency lights and sirens and was still traveling westbound on Highway 98 at approximately 50 miles per hour.

BPA Vega advised BPA Contreras that he could see his emergency lights traveling towards his location. BPA Vega positively deployed the CTDD deflating the front passenger tire.

The motor home began to slow down and came to a complete stop on the north shoulder of the highway. BPA Contreras stopped behind the motor home and walked over to the passenger side and opened the side door were he observed a total of 11 individuals lying on the floor. At no time did any individuals exit the motor home.
(CONTINUED ON NEXT PAGE)

| Signature<br>SARAH FELIX | Title<br>Border Patrol Agent |
|---|---|

3 of

| U.S. Department of Homeland Security | | Continuation Page for Form I-213 |
|---|---|---|
| Alien's Name<br>URUETA-HERREJON, Sergio | File Number<br>[redacted]<br>Event No: [redacted] | Date<br>02/17/2008 |

BPA Contreras identified himself as a United States Border Patrol Agent and questioned the individuals as to their right to be in or remain in the United States legally. All eleven subjects, including the driver who was later identified as URUETA-Herrejon, Sergio, individually replied that they were citizens of Mexico without proper legal immigration documents allowing them to be, reside, pass through, or be employed in the United States legally. All eleven individuals were subsequently placed under arrest. BPA Contreras observed the driver's seat to be empty. He observed that the person closest to the driver?s seat was URUETA and he was the only individual in the motor home that was completely dry and clean. Due to the fact that the other 10 individuals had mud on their shoes and their pants were wet from rafting across the All-American Canal, which parallels the International Boundary Line, BPA Contreras believed that URUETA was the driver. All eleven individuals were transported to the Calexico, California Border Patrol Station for further processing.

As a matter of normal processing procedures, URUETA?s biographical information and fingerprints were submitted to the Customs and Border Protections IDENT/IAFIS databases. The results from this submission revealed that URUETA possibly had prior immigration and criminal history. URUETA?s biographical information was submitted to [redacted] for confirmation. No prior criminal history was revealed. Record checks show that URUETA has prior immigration history, but no deportations or removals.

During a videotaped sworn statement, Field Operations Supervisor Nelson Atiles advised URUETA-Herrejon, Sergio that his administrative rights no longer applied because he was going to be processed under AUSA guidelines for criminal prosecution of 8 USC 1324, Alien Smuggling. URUETA was advised that the Miranda Rights would now take place of his Administrative Rights. URUETA was read his Miranda Rights by FOS Atiles and witnessed by Charlie Toledo in the Spanish language at 8:06 a.m. URUETA agreed to talk to FOS Atiles without the presence of a lawyer. URUETA stated that he left his home in Morelia, Michoacan approximately ten days ago and arrived in Mexicali, Baja California, Mexico. URUETA claimed that when he arrived in Mexicali he was smuggled by an unknown smuggler illegally into Calexico, California approximately eight days ago where he was taken to a stash house. URUETA claims that his brother was to pay the smugglers once he had arrived in Los Angeles, California. URUETA stated that while at the stash house the smuggler asked him if he could pick up a group of aliens on the interstate. URUETA stated that he was instructed what roads to take and was also given a radio to communicate with the smugglers. URUETA stated that after picking up the aliens he was suppose to take them to the Wal-Mart in Calexico where he would meet with the smuggler. URUETA stated upon delivering the aliens to Wal-Mart the smuggler would then take him to Los Angeles to his family. URUETA stated that he never saw the lights or heard the sirens of the Border Patrol Agent trying to stop him. URUETA stated that he heard a noise at which point he pulled over and came to a stop. URUETA stated that he knew it was illegal to pick up illegal aliens. URUETA stated that he had been previously apprehended three times by the Border Patrol.

URUETA-Herrejon, Sergio
DOB: [redacted]
COB: Mexico
A# [redacted]
FINS# [redacted]
FBI# [redacted]
CII# NONE

CRIMINAL HISTORY:
No criminal history was revealed pertaining to URUETA.
...(CONTINUED ON NEXT PAGE)

| Signature<br>SARAH FELIX | Title<br>Border Patrol Agent |
|---|---|

4 of 5 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

| U.S. Department of Homeland Security | | Continuation Page for Form I213 |
|---|---|---|
| Alien's Name<br>URUETA-HERREJON, Sergio | File Number<br>A###########<br>Event No: ######### | Date<br>02/17/2008 |

IMMIGRATION HISTORY:
A#########

URUETA has been apprehended by the United States Border Patrol on three prior occasions. The dates that coincide with those apprehensions are listed below:
February 3, 2008
February 4, 2008
February 5, 2008

URUETA was granted a Voluntary Return after his prior apprehensions.

URUETA was offered to speak with the Mexican Consulate and declined.

URUETA was provided with a Lujan Castro Form and URUETA read and acknowledged and signed the form.

Field Operations Supervisor Atiles approved prosecution on URUETA under 8 USC 1324.

URUETA claimed and appeared to be in good physical health.

URUETA requested and was denied a Voluntary Return to Mexico.

URUETA is being held at Imperial County Jail awaiting trial for the charge of Alien Smuggling (8 USC 1324). After URUETA will have completed his sentence for the charge against him, he will be presented before an Immigration Judge in a Removal Proceeding.

| Signature<br>SARAH FELIX | Title<br>Border Patrol Agent |
|---|---|

5 of 5 Pages

Form I-831 Continuation Page (Rev. 08/01/07)